**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

TRANS-TEC INTERNATIONAL, S.R.L.,

    Plaintiff,

v.                                    CASE NO:

TKK SHIPPING (PTE) LTD, and BOMIN
BUNKER OIL CORPORATION,

    Defendants.

_____/

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

TRANS-TEC INTERNATIONAL, S.R.L. ("TRANS-TEC") files suit against TKK SHIPPING (PTE) LTD ("TKK") and BOMIN BUNKER OIL CORPORATION ("BOMIN"), and alleges:

**NATURE OF ACTION**

1. This is an action for damages and declaratory relief under 28 U.S.C. § 2201 to resolve a dispute between the parties as to the applicable contractual terms and provisions for a marine fuel sale and damage claims arising out of the grounding of a vessel owned by TKK after it allegedly used fuel purchased from TRANS-TEC and supplied by BOMIN, as well as TKK's failure to cooperate in the investigation of the vessel grounding.

**JURISDICTION AND VENUE**

2. Jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) and personal jurisdiction exists over the defendants because the parties agreed to resolve any disputes arising

out of their contracts and transactions by irrevocably and exclusively submitting to the jurisdiction of a court in Miami, Florida.

4. All conditions precedent have occurred, have been performed, or have been waived.

## THE PARTIES

5. TRANS-TEC is a Costa Rican limited liability company with its principal place of business in San Jose, Costa Rica. It is a wholly owned subsidiary of World Fuel Services Corporation, a Florida corporation, with its principal place of business in Miami, Florida. TRANS-TEC supplied marine fuel to TKK for one of its vessels in Panama.

6. TKK is a Singaporean limited company with its principal place of business in Singapore. TKK purchased marine fuel from TRANS-TEC for its vessel Thorco Lineage.

7. BOMIN is a Texas corporation with its principal place of business in Houston, Texas. BOMIN supplied the marine fuel to TRANS-TEC for the subject transaction.

## THE MARINE FUEL SALE

8. On June 1, 2018, TKK placed an order with TRANS-TEC for 680 metric tons of marine fuel for its vessel Thorco Lineage.

9. That same day, on June 1, 2018, TRANS-TEC ordered the marine fuel from its supplier BOMIN. The BOMIN Confirmation, which formed the contract between TRANS-TEC and BOMIN, is attached as Exhibit "A."

10. On June 4, 2018, TRANS-TEC, as the Seller, sent its Confirmation to TKK, the Buyer, forming the contract between the parties for the subject marine fuel sale (the "TKK Confirmation"). A copy of the TKK Confirmation is attached as Exhibit "B."

11. The TKK Confirmation provided that it is "governed by and incorporates by reference the Seller's Marine Group of Companies General Terms and Conditions for the sale of

marine fuel products and related services, including the law and jurisdiction clause therein, in effect as of the date that this confirmation is issued, unless alternative terms and conditions have been prior agreed in writing by an authorized representative of the Seller." *See* Exhibit "B."

12. The World Fuel Services Marine Group of Companies General Terms and Conditions (the "GTC") that were incorporated into the TKK Confirmation are attached as Exhibit "C."

13. Prior to the TKK Confirmation, TKK and TRANS-TEC, through their respective parent companies, entered into a separate agreement to govern the sale and purchase of marine fuel titled the "Framework Agreement," a copy of which is attached as Exhibit "D."

14. The marine fuel was delivered to the Thorco Lineage on June 7, 2018 at the Port of Cristobal, Panama. A copy of the Bunker Delivery Receipt is attached as Exhibit "E."

15. No complaints about the quality of the supplied fuel were made while the fuel was being stemmed onto the vessel or after delivery was complete.

## THE VESSEL GROUNDING AND RESULTING CLAIMS

16. Carrying 10,287.07 metric tons of zinc calcine, the Thorco Lineage left Panama on course to Australia on June 7, 2018.

17. On June 24, 2018, the vessel ran aground on a low lying atoll in French Polynesia after suffering an engine failure allegedly within 24 hours of switching over to the fuel supplied by TRANS-TEC.

18. The same day, on June 24, 2018, the charterers of the Thorco Lineage, through TKK, notified TRANS-TEC of the vessel grounding and engine failure, asserting a claim allegedly due to improper marine fuel supplied by TRANS-TEC in Cristobal, Panama that was of poor quality and/or of the wrong fuel specifications agreed to by the parties.

19. TRANS-TEC in turn notified BOMIN of the vessel grounding and TKK's claim the same day, on June 24, 2018.

20. In response, on June 26, 2018, BOMIN advised TRANS-TEC that the claim was time barred pursuant to a provision in BOMIN's General Conditions of Sale and Delivery ("BOMIN's General Conditions"). A copy of BOMIN's General Conditions is attached as Exhibit "F."

21. TRANS-TEC disagrees with BOMIN that BOMIN's General Conditions apply to the subject marine fuel sale and vessel grounding.

22. TRANS-TEC further disagrees with BOMIN that the claim is time barred under BOMIN's General Conditions.

23. Upon being notified of the vessel grounding, TRANS-TEC sent a surveyor to the Thorco Lineage to investigate the loss and alleged damages.

24. The GTC required TKK to cooperate with TRANS-TEC in connection with any alleged off-specification product. In addition, upon submitting a claim regarding the quality of the fuel, TKK was required under the GTC and Framework Agreement to allow TRANS-TEC to board the vessel, investigate the vessel and its records, and make copies of documents that TRANS-TEC considers necessary for its investigation.

25. TKK failed to cooperate with TRANS-TEC by, including but not limited to, restricting TRANS-TEC's surveyor's access to the Thorco Lineage, its crew, its records and samples of the fuel on board.

## **COUNT I – BREACH OF CONTRACT – FAILURE TO COOPERATE (TKK)**

26. TRANS-TEC incorporates paragraphs 1 through 25.

27. TRANS-TEC and TKK entered into a contract where TRAN-TEC supplied 680 metric tons of marine fuel to TKK, for which TKK agreed to pay $310,765.82. *See* the TKK Confirmation attached as Exhibit "B."

28. TKK was required under the contract to fully cooperate with TRANS-TEC in the event of a claim or loss arising out of an alleged defect in the quality of the fuel supplied. *See* the GTC attached as Exhibit "C."

29. TKK was further required under the GTC and the Framework Agreement to allow TRANS-TEC to board the Thorco Lineage and investigate the vessel's records and make copies of documents necessary for its investigation.

30. TKK breached the contract by failing to cooperate with TRANS-TEC after the grounding of the Thorco Lineage, including but not limited to refusing to allow representatives of TRANS-TEC to timely board the vessel, refusing to allow for testing of fuel samples, and refusing to provide pertinent records of the vessel.

31. Pursuant to the GTC and the Framework Agreement, refusal to allow boarding of the vessel and/or to produce copies of documents shall constitute a waiver of TKK's claim.

32. As a result of TKK's breaches, TRANS-TEC was damaged and prejudiced in its ability to investigate the subject loss and mitigate against further loss.

WHEREFORE, TRANS-TEC respectfully requests that the Court deem TKK's claim to be waived based on its failure to cooperate and accordingly demands a judgment, plus contractual interest, attorney's fees, costs, and any such other relief that this Court deems necessary and proper.

## COUNT II – BREACH OF CONTRACT (BOMIN)

33. TRANS-TEC incorporates paragraphs 1 through 25.

34. TRANS-TEC and BOMIN entered into a contract (the BOMIN Confirmation) in which BOMIN agreed to supply TRANS-TEC with 680 metric tons of marine fuel according to the fuel grade and specifications outlined in the BOMIN Confirmation. *See* Exhibit "A."

35. It has been alleged by TKK that the fuel supplied by BOMIN did not comply with the required fuel grade and specifications, resulting in damages to TKK and the Thorco Lineage.

36. To the extent TKK's allegations regarding fuel quality are true, BOMIN breached the contract with TRANS-TEC.

37. As a result of BOMIN's breach, TRANS-TEC has been damaged.

WHEREFORE, TRANS-TEC accordingly demands a judgment against BOMIN for its damages, and any such other relief that this Court deems necessary and proper.

## COUNT III – NEGLIGENCE (BOMIN)

38. TRANS-TEC incorporates paragraphs 1 through 25.

39. BOMIN owed TRANS-TEC a legal duty to provide marine fuel that could safely be consumed by vessels. It further owed a duty to advise of any quality issues with the marine fuel it provided to TRANS-TEC.

40. It has been alleged by TKK that the marine fuel supplied by BOMIN was defective and could not be safely consumed by its vessel the Thorco Lineage.

41. To the extent TKK's allegations are true, BOMIN breached its duties to TRANS-TEC by providing marine fuel that was not suitable for safe consumption in a vessel and by failing to advise TRANS-TEC of the issues in quality of the fuel it supplied.

42. BOMIN knew or should have known that the marine fuel it supplied to TRANS-TEC for the Thorco Lineage was not suitable for safe consumption by the vessel and that there were issues with the quality of the marine fuel.

43. As a result of BOMIN's breach, TRANS-TEC has been damaged.

WHEREFORE, TRANS-TEC accordingly demands a judgment against BOMIN, and any such other relief that this Court deems necessary and proper.

### COUNT IV – COMMON LAW INDEMNITY (BOMIN)

44. TRANS-TEC incorporates paragraphs 1 through 25.

45. A special relationship exists between TRANS-TEC and BOMIN because BOMIN agreed to provide marine fuel to TRANS-TEC pursuant to the fuel grade and specifications in the BOMIN Confirmation.

46. TKK has alleged that the marine fuel suppled for the Thorco Lineage was not of the fuel grade or specifications required under the TKK Confirmation and was not suitable for safe consumption by a vessel.

47. To the extent TKK's allegations are true, BOMIN is at fault.

48. TRANS-TEC is wholly without fault with respect to the quality of the marine fuel it provided to TKK.

49. To the extent TRANS-TEC is liable to TKK, the Charterers of the Thorco Lineage, or any other party arising out of the subject marine fuel sale, it is only because TRANS-TEC is vicariously, constructively, derivatively, or technically liable for the wrongful acts of BOMIN.

WHEREFORE, TRANS-TEC accordingly demands that it be indemnified by BOMIN for all damages arising out of the subject marine fuel sale and the grounding of the Thorco Lineage, and any such other relief that this Court deems necessary and proper.

### COUNT V – THE MARINE FUEL SALE TO TRANS-TEC AND ANY LOSS, DAMAGES, OR CLAIMS ARISING OUT OF THE SALE OR VESSEL GROUNDING ARE GOVERNED BY THE BOMIN CONFIRMATION AND NOT BOMIN'S GENERAL CONDITIONS (BOMIN)

50. TRANS-TEC incorporates paragraphs 1 through 25.

51. BOMIN has taken the position that any claim arising out of the marine fuel provided to the Thorco Lineage vessel is subject to BOMIN's General Conditions. *See* Exhibit "F."

52. TRANS-TEC disagrees with BOMIN that the fuel sale or any other loss, damage, or claim arising out of the sale is governed by BOMIN's General Conditions.

53. It is TRANS-TEC's position that the fuel sale between BOMIN and TRANS-TEC is governed exclusively by the BOMIN Confirmation, attached as Exhibit "A," which states that the contract and any question regarding its interpretation and validity will be governed by Florida law and by a court sitting in Miami, Florida.

54. Accordingly, an actual and present disagreement exists between the parties regarding their contractual rights and obligations arising out of the subject marine fuel sale, the grounding of the Thorco Lineage, and any claim for damages.

WHEREFORE, TRANS-TEC requests a declaration from the Court that the fuel sale by BOMIN to TRANS-TEC and any claims, loss, damages, and expenses arising out of the fuel sale and the grounding of the Thorco Lineage are governed by the BOMIN Confirmation and not BOMIN's General Conditions, and any such other relief that this Court deems necessary and proper.

### COUNT VI –ANY LOSS, DAMAGES, OR CLAIMS ARISING OUT OF THE SALE OR VESSEL GROUNDING ARE NOT TIME BARRED (BOMIN AND TKK)

55. TRANS-TEC incorporates paragraphs 1 through 25.

56. BOMIN has taken the position that any claim arising out of its fuel sale to TRANS-TEC and the grounding of the Thorco Lineage is time barred under BOMIN's General Conditions because it was not reported to BOMIN within 14 days after the fuel was delivered to the vessel.

57. TRANS-TEC disagrees with BOMIN that any claim arising out of the fuel sale or the grounding of the Thorco Lineage is time barred under BOMIN's General Conditions. It is TRANS-TECs' position that any claim is not time barred under the BOMIN Confirmation. Alternatively, even if BOMIN's General Conditions apply to the fuel sale or vessel grounding, any claim arising out of the sale or grounding is not time barred.

58. Accordingly, an actual and present disagreement exists between the parties regarding their contractual rights and obligations arising out of the subject marine fuel sale, the grounding of the Thorco Lineage, and TKK's claim for damages.

WHEREFORE, TRANS-TEC requests a declaration from the Court that any claim arising out of the fuel sale or the grounding of the Thorco Lineage is not time barred under the terms and provisions of the BOMIN Confirmation or BOMIN's General Conditions, and any such other relief that this Court deems necessary and proper.

### COUNT VII – THE MARINE FUEL SALE TO TKK AND ANY LOSS, DAMAGES, OR CLAIMS ARISING OUT OF THE SALE OR VESSEL GROUNDING ARE GOVERNED BY THE TKK CONFIRMATION, THE FRAMEWORK AGREEMENT, AND THE GTC (TKK AND BOMIN)

59. TRANS-TEC incorporates paragraphs 1 through 25.

60. TKK and the Charterers have notified TRANS-TEC of a claim for unspecified damages arising out of the grounding of the Thorco Lineage and the marine fuel supplied by TRANS-TEC.

61. TRANS-TEC, in turn, has notified BOMIN of TKK's claim and has taken the position that BOMIN is liable to TRANS-TEC for any and all losses, costs, and expenses arising from the fuel sale and vessel grounding.

62. Consequently, litigation between TKK, TRANS-TEC, and BOMIN is both imminent and unavoidable.

63. The parties disagree, however, regarding which contractual terms and conditions, including but not limited to the choice of law provision, forum selection clause, and limitations on recoverable damages.

64. The parties are in doubt as to their contractual rights, duties, and obligations, and an actual and present disagreement exists regarding which contractual terms and conditions apply to the marine fuel sales, the grounding of the Thorco Lineage, and TKK's claim for damages.

65. TKK's position is that the fuel sale by TRANS-TEC and any claim, loss, or damage arising from the fuel or the vessel grounding are governed the "Framework Agreement" attached as Exhibit "D." Indeed, its Head of Bunkers confirmed in writing that the Framework Agreement applied for the fuel sales between TKK and TRANS-TEC. *See* June 27, 2018 E-mail Correspondence attached as Exhibit "G."

66. By contrast, TRANS-TEC contends, pursuant to the TKK Confirmation, the GTC governs the fuel sale and any claim, loss, or damage arising from the sale, unless alternative

terms and conditions have been prior agreed in writing. *See* the TKK Confirmation, attached as Exhibit "B."

67. TRANS-TEC agrees that the Framework Agreement qualifies as a prior agreement and accordingly applies to the subject fuel sale.

68. The Framework Agreement provides that the terms in Appendix 1 of the Framework replace the GTC. Yet in the event there is any conflict with regard to the terms in Appendix 1 and the terms in the TKK Confirmation, which incorporates the GTC, then the TKK Confirmation shall govern. *See* Framework Agreement, attached as Exhibit "D," Par. 3.5.

69. Accordingly, to the extent Appendix 1 of the Framework Agreement is silent on a specific term or condition, or there is a conflict between the TKK Confirmation and the Framework Agreement, then the TKK Confirmation and GTC apply.

70. Specifically, Appendix 1 of the Framework Agreement does not contain a choice of law provision or forum selection clause if the parties cannot mutually agree on applicable law or forum.

71. Consequently, with respect to choice of law and forum selection for disputes and claims regarding the quality of fuel supplied or any damages, loss, claims, or expenses arising from fuel sales, the TKK Confirmation and GTC apply.

72. The GTC provide that any disputes concerning the quality of fuel shall only be resolved in a court of competent jurisdiction in Miami-Dade County, Florida. The GTC further provide that disputes over payment and collection be resolved, at TRANS-TEC's option, in the Miami-Dade, Florida state or federal courts. Under the GTC, TKK irrevocably submits to the jurisdiction of the court selected by TRANS-TEC and waives any right to a trial by jury. *See* Exhibit "C."

73. The GTC further provide that the fuel sale shall be governed by the general maritime law of the United States, the applicable federal laws of the United States, and in the event such laws are silent on a disputed issue, the laws of the state of Florida. *See* Exhibit "C."

74. Accordingly, a dispute exists between the parties as to the applicable terms and conditions in the GTC and the Framework Agreement, including but not limited to the choice of law and forum selection for disputes regarding fuel quality.

WHEREFORE, TRANS-TEC requests a declaration from the Court that the subject fuel transactions and any and all claims, loss, damages, and expenses arising out of the sale and the grounding of the Thorco Lineage are governed by the Framework Agreement, and where the Framework Agreement is silent or conflicts with the GTC, then the GTC applies, and any such other relief that this Court deems necessary and proper.

Dated: August 7, 2018

Respectfully submitted,

s/Barry L. Davis
**BARRY L. DAVIS**
Florida Bar No. 294977
barry.davis@clydeco.us

Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T: 305.446.2646
F: 305.441.2374
Attorneys for Plaintiff